(USAO GAN 6/10)  Search Warrant

| | FILED IN CHAMBERS |
| --- | --- |
| | U.S.D.C ATLANTA |
| Date: | Jul 24 2024 |
| | KEVIN P. WEIMER, Clerk |
| By: | Kari Butler |
| | Deputy Clerk |

# United States District Court

### NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

**SAMSUNG CELL PHONE
SEIZED ON JULY 20, 2024,**

**APPLICATION AND
AFFIDAVIT FOR
SEARCH WARRANT**
Case number: 4:24-MC-81

I, Corey J. Wright, depose and say under penalty of perjury:

I am a Task Force Officer with the Drug Enforcement Administration and have reason to believe that in the property described as:

- **Subject Device 2: Samsung cell phone with blue backing and black case, currently located in self-sealing evidence envelope (SSEE) # S001661342, seized on July 20, 2024, as described further in Attachment A**

in the Northern District of Georgia there is now concealed certain property, certain information, and certain data, namely,

**See Attachment B,**

which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 21, United States Code, Sections 841 and 846. The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT**

Continued on attached sheet made a part hereof.

Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

*Corey J Wright*
Signature of Affiant
Corey J. Wright

July 24, 2024
Date

Rome, Georgia
City and State

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

AUSA Nicholas L. Evert | nicholas.evert@usdoj.gov

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Corey J. Wright, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), hereby depose and state under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

### INTRODUCTION

1.    I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2.    This affidavit is made in support in support of an application for search warrants to conduct forensic examinations of the following electronic device (collectively, the "**SUBJECT DEVICES**") seized during a DEA enforcement operation on July 20, 2024, currently in the possession of DEA agents at the DEA Rome Post of Duty evidence room, and described further in **Attachment A**:

   a. **SUBJECT DEVICE 1–** Samsung cell phone with black backing and no case, currently located in self-sealing evidence envelope (SSEE) # S001533810,

   b. **SUBJECT DEVICE 2 –** Samsung cell phone with blue backing and black case, currently located in self-sealing evidence envelope (SSEE) # S001661342

3.    Based on the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that there is presently concealed in the **SUBJECT**

**DEVICES** items described in **Attachment B**, which is incorporated herein by reference, all of which constitute evidence, fruits, and/or instrumentalities of, *inter alia*, violations of Title 21, United States Code, Sections 841 and 846, which prohibit the distribution, possession with the intent to distribute, and conspiracy to distribute and possess with the intent to distribute controlled substances.

4.     The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying and seizing electronically stored information and data further described in **Attachment B**. In my training and experience, I know that the **SUBJECT DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into law enforcement possession.

## AFFIANT BACKGROUND

5.     I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been since January of 2022. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

6.     I have been a law enforcement officer since December of 2016. I am currently employed with the Floyd County Police Department and hold the rank

of Sergeant. I am currently assigned to the DEA Atlanta Field Division, Rome Post of Duty.

7.     During my time as a law enforcement officer I have received training in various aspects of the criminal justice field. This training ranges from basic investigative courses, motor vehicle law, and tactical operations such as SWAT operator levels I and II.

8.     Prior to and during my assignment with DEA, I have participated in numerous search warrants pertaining to the seizure of contraband and evidence, including warrants resulting in the seizure of illegal drugs, drug paraphernalia, drug records, and proceeds of drug trafficking. I have debriefed numerous defendants, informants, and witnesses who possessed personal knowledge regarding drug trafficking organizations. I also have become familiar with and utilized investigative techniques such as, without limitation, electronic and physical surveillance, general questioning of witnesses, use of search warrants, use of informants, use of grand jury subpoenas, use of pen registers, and use of undercover agents.

9.     Based on my training and experience in the investigation of drug traffickers, and based upon interviews I have conducted with defendants, informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business. My familiarity includes the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones to facilitate drug activity; and their use of numerical codes and code words to conduct drug

transactions. I also am familiar with the ways that drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of carriers to transport currency and proceeds, the use of third parties to purchase or hold title to assets, and the use of off-shore accounts and the use of computer or smart phone applications for the transfer of virtual or crypto-currency.

10.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## SOURCES OF INFORMATION

11.     I make this affidavit based upon personal knowledge derived from my participation in this investigation; information I have learned from discussions with DEA Special Agents, Task Force Officers, Intelligence Analysts, and/or other local and state law enforcement officers; and from recorded phone calls, GPS pings, tracker data, and surveillance.

12.     Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed.  Such statements are stated in substance, unless otherwise indicated.  Wherever in this affidavit I state a belief, that belief is based upon my training and experience and the information obtained through this investigation.

13.     The facts relayed in this affidavit do not reflect the totality of information known to me or other agents and officers, and are merely the facts necessary to establish probable cause.  I do not rely upon facts not set forth herein in reaching my conclusion that a warrant should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of the application for a warrant.

## PROBABLE CAUSE

### Discovery of methamphetamine laboratory

14.     On July 20, 2024 at approximately 1:10pm, Floyd County, Georgia e911 Dispatch received a 911 phone call advising that a white male wearing shorts and no shirt pointed a rifle at the caller and stole the caller's vehicle at the Coosa Waste Water Treatment facility, located at 650 Ausburn Road, Rome, Georgia 30165 (within the boundaries of the Northern District of Georgia). Floyd County Police Department officers began responding to the scene immediately.

15.     The stolen vehicle was a red 2014 Nissan Altima bearing Georgia license plate number RFL5928.

16.     While officers were en route to 650 Ausburn Road, Floyd County e911 received a separate call advising that, a few minutes prior to the Nissan being stolen, the caller observed a male walking on Ausburn Road carrying what the caller described as an AR-15 rifle. The caller went on to state they had heard one shot and then approximately five rapid shots a few minutes later. The caller described the male as Hispanic and between the ages of 25 and 30 years old.

17.    Floyd County Officers arrived at 650 Ausburn Road at approximately 1:26pm and addressed the victim. They also relayed information regarding the suspect and stolen vehicle to surrounding counties.

18.    Due to multiple shots being reported in the area, Floyd County Police Department Officer Camron Roubieu and Sergeant Dan Bickers began going door to door checking the welfare of citizens residing in the area. Roubieu and Bickers arrived at 848 Ausburn Road, Rome, Georgia and observed the front door of the residence was open. As the officers approached the residence, they observed the glass on the storm door appeared to be broken as if it had been shot. This observation led Officer Roubieu and Sgt Bickers to suspect there may be gunshot victims inside the residence.

19.    Officer Roubieu and Sgt Bickers entered and cleared the residence pursuant to exigent circumstances presented by the shots being fired in the area. While clearing the residence ensuring there were no injured people, Officer Roubieu and Sgt Bickers observed multiple large plastic totes containing a brown substance covered in white paint. They also reported cans of acetone, multiple "hot plates," a small electric device often used at campsites to cook with, and several large pots and buckets containing what appeared to be the same substance observed in the large plastic totes.

20.    In addition to the visual observations, Officer Roubieu and Sgt Bickers detected a strong chemical odor emitting from inside the residence suspected by them to be coming from the containers of brown liquid and white paint.

21.     Officer Roubieu and Sgt Bickers then exited the residence, secured the property to prevent anyone from entering, and advised me via cell phone of their findings. I advised Roubieu that members of the Rome Post of Duty would be responding due to the possibility of the items observed being a clandestine methamphetamine conversion lab.

22.     At approximately 4:51pm, TFO Matt Meyers and I responded to the scene at 848 Ausburn Road and were briefed by Roubieu and Bickers on the totality of the situation. TFO Meyers and I conducted a field test of the brown substance located inside one of the plastic totes. The field test indicated a positive result for methamphetamine.

23.     At approximately 6:20pm, I secured a state search warrant for 848 Ausburn Road through Floyd County Magistrate Court. Pursuant to a search of the residence, a black Samsung cell phone (**SUBJECT DEVICE 1**) was discovered by Special Agent Ray Devogt on a countertop next to the front door and was seized by me. In addition to the seizure of **SUBJECT DEVICE 1**, seven samples of suspected methamphetamine were seized from different containers to be tested at a DEA lab.

**Arrest of Ruben Daniel HERNANDEZ-Huerta pursuant to traffic stop**

24.     As the actions leading to the discovery of the methamphetamine conversion lab were taking place, information pertaining to the stolen vehicle, such as the vehicle description and license plate number, was relayed to law enforcement agencies surrounding Floyd County.

25.     At approximately 2:02pm, Carrollton Police Department Officer Jordan Preston received a "BOLO" (be on the lookout) from Carroll County 911 for a red Nissan Altima bearing Georgia license plate number RFL5928. Carroll County 911 also advised that a male suspect operating the vehicle was likely armed and had been involved in an armed robbery.

26.     Carrollton Police Department Officer Dustin Krish received the same information and searched a license plate camera database for Georgia license plate number RFL5928. The search indicated that the stolen Nissan was in the area of Newnan Street and Dixie Street in Carrollton, Georgia. Officer Krish advised Officer Preston of the search results pertaining to the stolen Nissan.

27.     At approximately 2:04pm, Officer Preston observed the Nissan traveling west on Bankhead Highway in Carrollton, Georgia. Officer Preston advised 911 and other officers that he had located the stolen Nissan and was awaiting backup before initiating a traffic stop.

28.     At approximately 2:05pm, Officer Preston initiated a traffic stop with the Nissan Altima at a Marathon gas station located at 813 Bankhead Highway, Carrollton, Georgia 30117. Officer Preston verified that the tag matched that of the stolen vehicle (Georgia license plate number RFL5928). Knowing that the suspect was likely armed and had committed the felony of theft by taking a motor vehicle, Officers Preston and Krish drew their service weapons and instructed the suspect to exit the vehicle. The suspect exited the vehicle and laid on the ground per the officers' instructions. Officer Preston then placed the suspect in handcuffs, searched him, and secured him in the back seat of his

patrol vehicle. Officer Preston reported the suspect was shirtless and wearing wet shorts.

29.     The suspect matched the second 911 caller's description of the male walking on Ausburn Road carrying a rifle. The suspect's shorts were stained with white paint. Based on my visual examination of the paint found in the residence and the paint observed in a picture of the suspect during his arrest, the color of the paint on the shorts was identical to the color of the paint found inside 848 Ausburn Road.

30.     Officer Preston began attempting to identify the suspect. There was a significant language barrier between the officers and the suspect. Officer Preston obtained the name of "Ruban Daneal" with a date of birth of May 30, 1989. A GCIC query did not return with an identity. The suspect advised Officer Preston that he had never had an identification in the United States.

31.     A search of the vehicle led to the discovery and seizure of a tan and black Palmetto State Armory AR-15 rifle (serial number: SCD576188). Officer Preston reported the rifle had one round in the chamber and an empty magazine. Officer Preston also discovered and seized a blue Samsung cell phone (**SUBJECT DEVICE 2**) which was placed on the ground by the suspect when exiting the vehicle.

32.     Officer Preston then transported the suspect to the Carroll County Jail, where he was met by Carroll County Jail Officer Bone who utilized a fingerprint scanner to attempt to identify the suspect. The fingerprint scanner was unable to identify the suspect.

33.     The Carroll County Jail staff provided a translator to assist in the
identification process of the suspect. The suspect was identified as Ruben Daniel
HERNANDEZ-Huerta. HERNANDEZ stated that he was an illegal immigrant
and had only been in the United States for three months.

34.     HERNANDEZ was booked into the Carroll County Jail on the state
charge of Theft by Receiving Stolen Property. A warrant was also secured in
Floyd County for the state charge of Theft by Taking Motor Vehicle by Floyd
County PD investigator Carlos Ribot.

35.     Officer Preston then met with Investigator Ribot at the Carrollton Police
Department, where Ribot took custody of the AR-15 rifle and **SUBJECT DEVICE
2**, which had been seized at the traffic stop.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36.     Based on my knowledge, training, and experience, I know that
electronic devices such as the **SUBJECT DEVICES** can store information for long
periods of time.  Similarly, things that have been viewed via the Internet are
typically stored for some period of time on the device.  This information can
sometimes be recovered with forensics tools and other techniques.

37.     *Forensic evidence.*  As further described in **Attachment B**, this
application seeks permission to locate not only electronically stored information
that might serve as direct evidence of the crimes described on the warrant, but
also forensic evidence that establishes how the **SUBJECT DEVICES** were used,
the purpose of their use, who used them, and when.  There is probable cause to

believe that this forensic electronic evidence might be on the **SUBJECT DEVICES** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    f. I know that when an individual uses an electronic device to conduct drug trafficking activity, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of

this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

38.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICES** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. The examination may require physical manipulation of the device, including removing or de-soldering the data storage chips within the phone to review the information stored on the device.

39.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion on to a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

40.     I submit that this affidavit supports probable cause for search warrants authorizing the examination of the **SUBJECT DEVICES** described in **Attachment A** to seek and seize the items described in **Attachment B**.

## END OF AFFIDAVIT

## **Attachment A**

The property to be searched are the following cellular telephones:

1. **SUBJECT DEVICE 1-** Samsung cell phone with black backing and no case, currently located in self-sealing evidence envelope (SSEE) # S001533810,

2. **SUBJECT DEVICE 2-** Samsung cell phone with blue backing and black case, currently located in self-sealing evidence envelope (SSEE) # S001661342

The **SUBJECT DEVICES** are currently stored in the DEA Rome Post of Duty evidence room at 800 Broad St Suite 212, Rome, Georgia 30161.

**Attachment B**

1.      All records and information on the **SUBJECT DEVICES** described

in **Attachment A**, that constitute evidence of violations of 21 U.S.C §§ 841 and

846, including, but not limited to:

     a.   Contact information to include names, addresses, telephone numbers, email addresses, or other identifiers;

     b.   Call log information, including missed, incoming and outgoing calls and any information associated with those numbers;

     c.   Any photographs, video and audio files that evidence the manufacture, possession, or distribution of controlled substances and the collection, storage, or transmission of drug proceeds;

     d.   Any stored communications, including text messages, email messages, chats, multimedia messages, messages through other installed applications or other electronic communications that evidence the manufacture, possession, or distribution of controlled substances and the collection, storage, or transmission of drug proceeds;

     e.   Any calendar, note password and/or dictionary entries;

     f.   Any Global Positioning Satellite (GPS) entries, records of Internet Protocol Connections, and location entries to include cell tower and Wi-Fi entries;

     g.   Any internet or browser entries or history;

     h.   Any system data or configuration information contained within the device;

     i.   All of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2.      Evidence of user attribution showing who used or owned the

**SUBJECT DEVICES** at the time the things described in this warrant were

created, edited, or deleted, such as logs, phonebooks, saved usernames and

passwords, documents, and browsing history.

For discovery and trial authentication purposes, DEA will maintain full forensic copies of the **SUBJECT DEVICES**.